# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| **JEFFERY R. WATTS # 391236,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 1:24-CV-00084** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **GARY JACOBS,** *et al.,* | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffery R. Watts, an inmate of the FCI-Atlanta, filed a pro se, in forma pauperis complaint under 42 U.S.C § 1983, alleging violations of his civil rights. (Doc. Nos. 1, 32). He also filed a Motion to Amend Complaint. (Doc. No. 42). The Court will begin with that motion.

## I. MOTION TO AMEND COMPLAINT

Along with his Motion to Amend Complaint, Plaintiff filed a Proposed Amended Complaint. (Doc. No. 42). The Court's Order of September 8, 2025, gave Plaintiff permission to file an amended complaint within sixty days. (Doc. No. 41). Plaintiff's timely-filed Motion to Amend (Doc. No. 42) will be granted. The proposed Amended Complaint attached to Doc. No. 42 is now the operative pleading in this case. As it is the Second Amended Complaint filed by Plaintiff in this case, the Court will refer to it as such.

The Second Amended Complaint alleges claims against the following Defendants: Hickman County Mayor Jim Bates; Hickman County Sheriff Jason Craft; Hickman County Sheriff's Department Chief Deputy Joseph "Joey" Cox; Superintendent of the municipal jail for the City of Centerville, Tennessee Nick Batts; Hickman County Jail Shift Sergeant Jamie Bragg; Hickman County Jail guard K. Walker; Hickman County Jail Shift Sergeant and Disciplinary

1

Hearing Officer David Jenkins; Hickman County Jail Shift Sergeant f/n/u Sunder; Jail nurse Kelly Hill; Nurse Practitioner Robin l/n/u; traveling nurse f/n/u Mitzia; Southern Health Partners; Natchez Trace ER; Natchez Trace ER Medical Staff; Hickman County Sheriff's Deputy David Martinez; Hickman County Sheriff's Deputy Dave Nordon; Hickman County Sheriff's Deputy Thomas "Tommy" McClanahan; Hickman County Sheriff's Deputy and Training/Supervisor for the Sheriff's Department Michael "Mike" Doddo; and Hickman County, Tennessee. (Doc. No. 42-1 at 1-5).

The Second Amended Complaint abandons claims against Mayor of the City of Centerville, Tennessee Gary Jacobs; City of Centerville; and Jail Inspector Josie Blystad. Thus, these individuals and entities are no longer considered Defendants to this action.

## II. PLRA SCREENING OF THE SECOND AMENDED COMPLAINT

The Second Amended Complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v.*

*Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## A. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983 which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## B. Facts Alleged in the Second Amended Complaint[1]

The allegations of the Second Amended Complaint are assumed true for purposes of the required PLRA screening.

On November 30, 2023,[2] Hickman County deputy David Martinez "repeatedly punched and kneed the Plaintiff in the face while the Plaintiff was being tased by Det. [Dave] Nordon

---

[1] The Second Amended Complaint consists of fifty handwritten pages and includes allegations spanning from November 30, 2023, to January 16, 2025.

[2] Plaintiff's dates (particularly the year) are inconsistent throughout the fifty-page pleading. It is unclear at times whether Plaintiff intended to type 2023 but inadvertently typed 2024. The Court surmises from context that Plaintiff's initial arrest occurred in 2023. Going forward, however, all applicable dates will need to be clarified as some claims may be barred by the governing statute of limitations if the correct year is 2023.

continuously for approx. 30 seconds which made [Plaintiff] defenseless." (Doc. No. 42 at 9). Plaintiff sustained multiple injuries, including four broken teeth, a black eye, a "broken left wrist/hand, and the extreme pain of being tasered for a prolonged period of time, along with other mental issues included PTSD from being beaten by the sheriff's department, as well as bruises and burn marks." (*Id.*) Several minutes after being tasered, Plaintiff's blood pressure was 185/120, and he experienced "very painful chest pains." (*Id.* at 10).

Jason Craft, Joseph "Joey" Cox, Mike Doddo, and Thomas "Tommy" McClanahan failed to adequately train and supervise Martinez and Nordon. Nordon used the taser against Plaintiff in an improper way, which caused Plaintiff to incur severe pain, bruises, and burn marks all over his "lower backside." (*Id.*) Officer McClanahan was present during the November 30th incident and failed to intervene. Neither was he trained "on how to download his body camera to the server or hard drive, which resulted in the video footage [of the incident] being erased, which is against the Hickman County Sheriff Department's policy." (*Id.* at 10).

Hickman County, Jim Bates, Craft, Cox, Batts, Jamie Bragg, f/n/u Sunder, David Jenkins, Southern Health Partners, Robin l/n/u, Kelly Hill, and f/n/u Mitzia did not provide Plaintiff with proper medical care "[f]rom Nov. 30, 2023, till March 5, 2024 – April 10, 2024 till Jan. 16, 2025." (*Id.* at 12). Plaintiff showed "every guard who worked in his unit" the injuries to his left hand ("because his hand would swell up, discolor (turn bluish)" and described "the extreme pain he was in . . . for months." (*Id.*)

Southern Health Partners maintains a policy regarding over-the-counter pain medications such as Tylenol and Ibuprofen. Pursuant to this policy, Plaintiff would be given "pain meds" for a few days then must wait a week or longer for Kelly to renew the "pain meds." (*Id.*) Kelly, Batts,

4

Cox, Bragg, Jenkins, and Sunder told Plaintiff that he could order Tylenol and Ibuprofen from the commissary, but Plaintiff could not afford those items.

By December 30, 2023, Plaintiff had filed several grievances regarding his medical treatment or lack thereof. On that date, Plaintiff threatened to sue the medical staff and to contact "the Board of Professional Responsibility." (*Id*.) Four hours later, "the jail officials" brought Plaintiff a wrist/hand brace. (*Id*. at 13). Bragg told Plaintiff that he had to be placed on "23 hrs lockdown" because of the brace. (*Id*.) Plaintiff accepted the brace and was placed on Administrative Segregation from the end of December 2023 until February 21, 2024. Plaintiff repeatedly asked to see a "psych doctor" but was never allowed. (*Id*. at 13-14).

Kelly spoke about Plaintiff's medical conditions to Batts "several times in Plaintiff's presence and without his permission to do so." (*Id*. at 14).

On March 5, 2024, Plaintiff was transferred to the Williamson County Jail. There, Plaintiff received a referral to see an orthopedic specialist, but Plaintiff was returned to the Hickman County Jail before that visit occurred. Plaintiff was not taken to the specialist until June 12, 2024, where he was told that his wrist would have to be rebroken and a piece of his left hip would need to be removed and placed in his hand with a permanent headless screw. Plaintiff's surgery occurred on September 13, 2024.

Upon returning to the jail after surgery, Plaintiff was in extreme pain and asked K. Walker if she would call Kelly to give Plaintiff pain medication. "The doctor who performed the surgery pr[e]scribed meds but the jail administration and medical personnel refused to give meds." (*Id*. at 15). Sunder refused to give Plaintiff medication.

Batts cancelled Plaintiff's follow-up visit after his surgery, interfering with Plaintiff's medical care.

5

After Plaintiff filed another grievance about his inadequate post-surgical medical care, Cox and Batts transferred Plaintiff to another facility and classified him as a "combative inmate" in retaliation for complaining. Craft failed to intervene to prevent the retaliatory transfer. Batts and Cox told Plaintiff, "If you ever come back to this facility, you'll go straight to the hole." (*Id*. at 18). Cox and Batts later made good on their threat by placing Plaintiff in isolation when he was returned to the Hickman County Jail. Plaintiff was held in isolation from April 10, 2024 until January 16, 2025.

The isolation cells, meant for fewer inmates, were housing multiple inmates. The space was so small that Plaintiff could not "walk in his cell which caused back pain, stiffness, soreness." (*Id*. at 19). The bright lights in the cell were never turned off, which deprived Plaintiff of sleep "for days on end" and caused him migraines several times a month. (*Id*. at 20). The cell had blood, urine, and bodily fluid on the walls, sink, toilet, and floor. Mold was growing "out the shower and . . . around the cell door." (*Id*.) Plaintiff obtained athlete's foot and a wart from showering there. He was not permitted any outdoor recreation in the sunlight by Craft, Cox, and Batts.

Craft, Bates, Cox, Batts, Walker, Bragg, and Jenkins denied Plaintiff access to the law library and to "legal materials" including access to the legal tablets and pen, paper, envelopes, and stamps to prepare and mail legal documents. (*Id*. at 22-23). Plaintiff "was forced to sell his State food/tray for the writing materials he needed." (*Id*. at 23). Plaintiff was not provided access to a notary public for preparing legal documents. This lack of access prevented Plaintiff from seeking Chancery Court review of his disciplinary hearing results.

Batts and Jenkins violated Plaintiff's right to a fair disciplinary hearing on March 1, 2024, and April 22, 2024.

On April 11, 2024, Batts placed Plaintiff in a "4 to 5 point restraint chair as the first option because the Plaintiffs refused two meals and was going on a hunger strike over the treatment he was receiving" at the Hickman County Jail. (*Id*. at 27). Plaintiff's left hand and wrist were injured "as the strap was pulled tight to hold his wrist/hand from moving." (*Id*.)

On December 6, 2024, Batts "broke policy an[d] escalated a situation with the Plaintiff and then pulled his taser on the Plaintiff." (*Id*.)

Plaintiff's mail at the Hickman County Jail was held for "about a month." (*Id*. at 28).

As relief, the Second Amended Complaint seeks a declaratory judgment, compensatory and punitive damages, a jury trial, costs, and any other relief the Court deems just, proper, and equitable.

## C. Analysis

Plaintiff brings this action against nearly twenty Defendants, alleging discrete events that occurred over approximately three years.

### 1. Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001). Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (internal quotation marks omitted); *Smith v. Lavender*, No. 2:22-CV-1875, 2022 WL 4121929, at *6 (S.D. Ohio, Sept. 9, 2022) (severing unrelated claims a prisoner filed in the same complaint against different defendants); *White v. Newcomb*, No. 2:21-cv-249, 2022 WL 2763305, at *4-5 (W.D. Mich. July 15, 2022) (providing that a plaintiff cannot join claims against multiple defendants in one lawsuit "'unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact'" (quoting *Proctor*, 661 F. Supp. 2d 743, 778 and collecting cases standing for the proposition that prisoners cannot join unrelated claims against different defendants in a single lawsuit); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.") (citations omitted). To allow

8

Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004); *see Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision'").

When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007). In applying these factors, the Second Amended Complaint alleges multiple claims against multiple Defendants occurring over the span of approximately three years, most of which are unrelated to the first act alleged (other than that the claims arose while Plaintiff was housed at the same facility). The first factual allegation set forth in the Second Amended Complaint is the use of excessive force during Plaintiff's arrest by two Hickman County deputies, Martinez and Nordon, on November 30, 2023.[3] Notably, this is the same allegation listed first in Plaintiff's original Complaint. (Doc. No. 1 at 10). There are no other allegations or claims mentioned in the Second Amended Complaint against these Defendants. *See White v. Perron*, No. 2:20-cv-247, 2021 WL 385589, at *7 (W.D. Mich. Aug. 30, 2021) (where prisoner-plaintiff's complaint contained misjoined claims and defendants, court looked to the first five defendants named in the action and plaintiff's first set of allegations to determine which claims and defendants should

---

[3] Again, at times Plaintiff provides November 30, 2023 as the date of his arrest; at other times, he identifies the date as November 30, 2024.

proceed); *Makupson v. Lee*, No. 1:24-CV-129-DCLC-SKL, 2024 WL 1856783, at *3 (E.D. Tenn. Apr. 29, 2014) (when prisoner-plaintiff's lawsuit complained of events occurring from 2022 through the present at two different facilities, in addition to claims regarding events that occurred while Plaintiff was not incarcerated, the court assumed that plaintiff's incarceration at the first facility, and any claims related to that detention, were at the core of his lawsuit).

Plaintiff's claims against McClanahan for failing to intervene in the November 30, 2023 incident are transactionally related to Plaintiff's excessive force claims against Martinez and Nordon. Likewise, Plaintiff's inadequate training and supervision claims against Craft, Cox, Doddo, and McClanahan are transactionally related because Plaintiff alleges that deputies Martinez and Nordon engaged in acts of excessive force against Plaintiff due to Craft, Cox, Doddo, and McClanahan's failure to train and supervise them. No other claim, however, is transactionally related.

Plaintiff's claims related to the medical treatment he received (or did not receive), retaliatory transfer and placement in an isolation cell claims, access to court claims, due process claims related to disciplinary charges and hearings, mail interference claims, excessive force claims for events that allegedly occurred on December 6, 2024, and state-law claims do not arise out of the same transaction or occurrence. Nor do they present questions of law or fact common to all Defendants. Plaintiff has, therefore, improperly joined to this action all Defendants (except Martinez, Nordon, Craft, Cox, Doddo, and McClanahan, as discussed above) and the following claims: deliberate indifference to medical needs claims against Hickman County, Bates, Craft, Cox, Batts, Bragg, Sunder, Jenkins, Southern Health Partners, Robin, Hill, and Mitzia; retaliation claims against Craft, Cox, and Batts; medical malpractice claims against Natchez Trace ER and Natchez Trace medical staff; conditions of confinement claims against Batts, Craft, Bates, Cox,

and Hickman County; access to courts claims against Craft, Bates, Cox, Batts, Walker, Bragg, and Jenkins; due process claims against Batts and Jenkins; civil conspiracy claims against Craft, Cox, and Batts; "class-of-one" claims against Craft, Cox, and Batts; excessive force claims against Batts; outrageous conduct claims against Craft, Cox, and Batts; and mail interference claims against unspecified Defendant(s).

Having determined that Plaintiff has improperly joined to this action multiple Defendants and claims against them, the Court must consider an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *White*, 2021 WL 3855589, at *7 (citation and internal quotation marks omitted). As a sister court has pointed out,

> At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Id*. (citing *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845). Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47.

*White*, 2021 WL 3855589, at *7.

Here, Plaintiff's claims are brought under Section 1983 and Tennessee state law. If the Court severed the misjoined claims and dismissed them without prejudice, many of Plaintiff's claims, if brought in a newly-filed action, would be subject to dismissal on statute of limitations grounds. Such a result would not be "just" as Plaintiff had no control over how long it has taken the Court to conduct the required screening of his claims. Thus, the Court will exercise its discretion under Federal Rule of Civil Procedure 21 to order severance that protects Plaintiff's rights to pursue the claims he raised in his Second Amended Complaint.[4]

Not all severed claims and Defendants would be properly brought in a single action, however. Each complaint must be limited to claims against Defendants that are transactionally related to one another. In other words, each complaint shall contain only allegations about properly joined claims against properly joined Defendants. Accordingly, the misjoined claims and Defendants will be severed into new cases. Plaintiff will be responsible for paying the civil filing fee for each severed complaint. The Court's review of the Second Amended Complaint indicates that Plaintiff's allegations and claims should be severed as follows:

The Instant Case: Alleges excessive force claims against Martinez and Nordon arising out of Plaintiff's arrest on November 30, 2023; failure to intervene claims against McClanahan arising out of Plaintiff's arrest on November 30, 2023; and inadequate training and supervision claims against Craft, Cox, Doddo, and McClanahan. Martinez, Nordon, McClanahan, Craft, and Cox are sued in their individual and official capacities. (Doc. No. at 2, 5-6). Doddo is sued in his official capacity only. (*Id.* at 6). These claims are transactionally related as discussed above.

Complaint 2: Alleges deliberate indifference to medical needs claims against Hickman County, Bates, Craft, Cox, Batts, Bragg, Sunder, Jenkins, Southern Health Partners, Robin, Hill,

---

[4] The Court makes no representations as to the viability of such claims.

12

and Mitzia; and medical malpractice claims against Natchez Trace ER and Natchez Trace medical staff. Craft, Cox, Batts, Bragg, Jenkins, Sunder, Hill, Robin, and Mitzia are sued in their individual and official capacities. (*Id*. at 2-4). Bates, Hickman County, Southern Health Partners, the Natchez Trace ER, and "the Natchez Trace medical staff" are sued in their official capacities only. (*Id*. at 2, 5-6). These claims are transactionally related because they concern the medical treatment Plaintiff did or did not receive while in the custody of the Hickman County Jail.

Complaint 3: Alleges retaliation claims against Craft, Cox, and Batts; conditions of confinement claims against Batts, Craft, Bates, Cox, and Hickman County; access to courts claims against Craft, Bates, Cox, Batts, Walker, Bragg, and Jenkins; due process claims against Batts and Jenkins; civil conspiracy claims against Craft, Cox, and Batts; "class-of-one" claims against Craft, Cox, and Batts; and outrageous conduct claims against Craft, Cox, and Batts. Craft, Cox, Batts, Bragg, and Jenkins are sued in their individual and official capacities. (*Id*. at 2-4). Bates, Walker, and Hickman County are sued in their official capacities only. (*Id*. at 2, 3, 6). These claims are transactionally related, though in a less obvious way. Plaintiff alleges that he was denied access to the law library and to materials he needed to file lawsuits regarding his treatment while at the Hickman County Jail and that Defendants retaliated against him for filing grievances and attempting to file lawsuits against Defendants by (among other things) unfair discipline, unwarranted transfer to another jail, classification as a combative inmate, placement in segregation without justification when returned to the Hickman County Jail, and disciplinary hearings without due process. Plaintiff's conditions of confinement claims are based on the conditions of his alleged retaliatory segregation.

Complaint 4: Alleges excessive force claims against Batts for April 11, 2024, and December 6, 2025 incidents and against Bragg for June 11, 2024 incident. Batts and Bragg are

sued in their individual and official capacities. (*Id*. at 2-3). These claims are transactionally related because they allege the use of excessive force by two Hickman County deputies during the time Plaintiff was incarcerated at the Hickman County Jail.

Having addressed the improperly joined claims and Defendants, the Court now moves to the PLRA screening of the Defendants and claims properly joined in the instant action.

2. <u>Excessive Force Claims against Martinez, Nordon, and McClanhan</u>

Plaintiff alleges excessive force claims against deputies Martinez and Nordon arising out of Plaintiff's arrest on November 30, 2023. Plaintiff also alleges an excessive force claim against deputy McClanahan based on his failure to intervene while witnessing the November 30th assault. Martinez, Nordon, and McClanahan are named as Defendants in their individual and official capacities.

a. *Individual Capacity Claims*

It appears Plaintiff was in the process of being arrested at the time of these Defendants' alleged use of excessive force. The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision.

Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and

14

whether "the pain inflicted was sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Id.* (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original). Plaintiff was not a convicted prisoner at the time he was being arrested by deputies Martinez and Nordon.

The Fourteenth Amendment's Due Process Clause protects a pretrial detainee—as opposed to a convicted prisoner—from the use of excessive force that amounts to punishment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *See id.* "The Supreme Court has recently clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows 'that the force purposefully or knowingly used against him was objectively unreasonable.'" *Coley v. Lucas Cnty., Ohio,* 799 F.3d 530, 538-39 (6th Cir. 2015) (quoting *Kingsley*, 576 U.S. 389, 397). The Fourteenth Amendment analysis is the applicable analysis here because Plaintiff had not been convicted at the time of the alleged use of excessive force.

The Second Amended Complaint alleges that, while arresting Plaintiff, deputy Martinez "repeatedly punched and kneed the Plaintiff in the face while the Plaintiff was being tased by Det. Nordon", during which time Plaintiff was defenseless. (Doc. No. 42 at 9). And, as a result of the attack, Plaintiff sustained multiple injuries, including four broken teeth, a black eye, a "broken left wrist/hand, and the extreme pain of being tasered for a prolonged period of time, along with other mental issues included PTSD from being beaten by the sheriff's department, as well as bruises and

burn marks." (*Id*. at 9-10) Based on these allegations, the Court finds that Plaintiff states colorable Fourteenth Amendment excessive force claims under Section 1983 against Martinez and Nordon in their individual capacities. These allegations warrant further factual development.

Next, the Second Amended Complaint alleges that deputy McClanahan witnessed the alleged assault by deputies Martinez and Nordon and could have intervened but failed to do so. "Liability can arise from inaction. Indeed, 'there are circumstances under which police officers can be held liable for failure to protect a person from the use of excessive force.'" *See Austin v. Ashcraft*, No. 1:22-cv-159, 2023 WL 6217096, at *5 (S.D. Ohio Sept. 25, 2023) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citations omitted)). An officer is liable for failure to prevent excessive force "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citation omitted).

Crediting Plaintiff's version of events, deputy McClanahan was present when deputy Martinez "repeatedly punched and kneed the Plaintiff in the face while the Plaintiff was being tased by Det. Nordon" and defenseless. (Doc. No. 42 at 9). It is unclear whether the assault lasted long enough for McClanahan to have had the opportunity and means to prevent the assault and ensuring injuries from occurring or continuing. *See id*. at *5 (citing *Burgess v. Fischer*, 735 F.3d 462, 475-76 (6th Cir. 2013) (finding facts insufficient to show opportunity and means to prevent harm where plaintiffs themselves "d[id] not contend that the takedown lasted any more than ten seconds"); *Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (no opportunity and means where instance of excessive force included only single use of taser); *Ontha v. Rutherford Cty., Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007) (no opportunity and means where instance of excessive force lasted six to seven seconds)). However, construing the allegations in the light most

favorable to the pro se plaintiff at this stage of the proceedings, the Court finds that Plaintiff's failure to intervene claim against deputy McClanahan in his individual capacity should proceed for further development of the record.

b. *Official Capacity Claims*

When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, the Second Amended Complaint alleges that Defendants are deputies of the Hickman County Sheriff's Department. Thus, it appears that Plaintiff seeks to hold Hickman County liable for these Defendants' actions.

A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Hickman County or its agent. *Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short, for Hickman County to be liable Plaintiff under Section 1983, there must be a direct causal link between an official county policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. 658, 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 393 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervising employees; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478. Plaintiff chooses the failure to train or supervise avenue and

17

asserts that Hickman County's—and specifically, Craft, Cox, Doddo, and McClanahan's—inadequate training caused the alleged excessive force.

To prevail on a failure to train or supervise claim, a plaintiff must establish three elements: first, that the municipality provided inadequate training or supervision for the tasks performed; second, that this inadequacy stemmed from the municipality's deliberate indifference; and third, that the inadequacy was closely related to, or caused, the alleged injury. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "Deliberate indifference is no small showing. It is a 'stringent standard of fault,' requiring proof that a municipal actor 'disregarded a known or obvious consequence of his action.'" *Ernnes v. Presque Isle Cnty.*, 773 F. Supp. 3d 400, 428 (E.D. Mich. Mar. 26, 2025) (quoting *Shadrick v. Hopkins County*, 805 F.3d 724, 737 (6th Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997))). To show deliberate indifference in the failure to train or supervise context, a plaintiff ordinarily must prove a pattern of similar constitutional violations by untrained employees. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011). As a result, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Berry v. Delaware Cnty. Sheriff's Office*, No. 19-3096, 796 F. App'x 857, 861 n.1 (6th Cir. 2019) (citing *Connick*, 563 U.S. at 61).

Nevertheless, this case is still at the screening stage, and the Second Amended Complaint alleges that the Sheriff's Department provided inadequate training or supervision for using a taser during arrest and for downloading body cam footage, that this inadequacy stemmed from the municipality's deliberate indifference (*see* Doc. No. 1 at 10), and that the inadequacy caused serious injuries to Plaintiff. These allegations are sufficient to state a colorable claim against

Hickman County. Of course, Plaintiff ultimately will be required to support his allegations with evidence.

3. Inadequate Supervision or Training Claims against Craft, Cox, Doddo, and McClanahan

The Second Amended Complaint alleges that McClanahan, Craft, Doddo, and Cox are responsible for the violation of Plaintiff's constitutional rights because they inadequately trained or supervised other deputies. McClanahan, Craft, and Cox are sued in their individual and official capacities. (Doc. No. at 2, 5-6). Doddo is sued in his official capacity only. (*Id.* at 6).

a. *Individual Capacity Claims*

To establish supervisory liability, a plaintiff must establish that the supervisory official "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (citation and quotation marks omitted). Supervisory liability will only attach if the supervisor "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley*, 799 F.3d at 542 (citation and quotation marks omitted). A supervisor's negligence or recklessness is insufficient to impose liability. *See Does v. Whitmer*, 69 F.4th 300, 307 (6th Cir. 2023). The plaintiff must therefore point to a "specific action" of the supervisor that contributed to the constitutional violation. *See Phillips*, 534 F.3d at 544.

Plaintiff has produced no evidence suggesting that Craft, Doddo, or Cox encouraged the alleged attack by Martinez and Nordon or in any way participated in it. In fact, there are no allegations that Craft, Doddo, or Cox were present during the attack, and Plaintiff points to no evidence that Craft, Doddo, or Cox ratified the deputies' conduct. Accordingly, the supervisory liability claims against Craft, Doddo, and Cox in their individual capacities fail.

19

Further, the Sixth Circuit has found that without such personal involvement, an attempt to hold an officer liable in his individual capacity for his "alleged failure to adequately train employees . . . 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (quoting *Phillips*, 534 F.3d 531, 543); *see also Heyerman v. County of Calhoun*, 680 F.3d 642, 646-48 (6th Cir. 2012) (finding that absent evidence of personal involvement in the alleged underlying misconduct, the defendant county official could not be individually liable based on her failure to train or supervise). "Thus, absent personal involvement, a failure to train claim against an individual officer is properly deemed to be brought against them in their official capacity and treated as a claim against the municipality." *See Poynter v. Whitley Cnty. Detention Ctr.,* 772 F. Supp.3d 745, 756 (E.D. Ky. Mar. 22, 2024) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)).

Here, the only Defendant alleged to have any personal involvement in the alleged underlying misconduct is deputy McClanahan. Given the controlling case law, the Court will consider Plaintiff's failure to train claim against McClanahan in his individual capacity as a claim against him in his official capacity and treat that claim as one against his employer, Hickman County.

b. *Official Capacity Claims*

The Second Amended Complaint alleges that Defendants are deputies of the Hickman County Sheriff's Department. Thus, Plaintiff's official capacity claims against McClanahan, Craft, Doddo, and Cox for failure to supervise and train are actually claims against Hickman County.

The Court has already considered Plaintiff's Section 1983 claims against Hickman County and found that those claims should proceed for further development.

20

### III. CONCLUSION AND REFERRAL

Plaintiff's Motion to Amend (Doc. No. 42) is **GRANTED**.

The Second Amended Complaint abandons claims against Mayor of the City of Centerville, Tennessee Gary Jacobs; City of Centerville; and Jail Inspector Josie Blystad. Thus, these individuals and entities are no longer considered Defendants to this action.

The Second Amended Complaint contains misjoined claims and Defendants. The misjoined claims and Defendants are hereby severed into new cases, and the Clerk is **DIRECTED** to file a copy of the Second Amended Complaint and this Memorandum Opinion and Order in the dockets of the new cases, dated as filed with the date of the original complaint. Plaintiff will be responsible for paying the civil filing fee for each severed complaint. Plaintiff's allegations and claims should be severed as follows:

The Instant Case: Alleges excessive force claims against Martinez and Nordon arising out of Plaintiff's arrest on November 30, 2023; failure to intervene claims against McClanahan arising out of Plaintiff's arrest on November 30, 2023; and inadequate training and supervision claims against Craft, Cox, Doddo, and McClanahan. Martinez, Nordon, McClanahan, Craft, and Cox are sued in their individual and official capacities. (Doc. No. at 2, 5-6).  Doddo is sued in his official capacity only. (*Id.* at 6).

Complaint 2: Alleges deliberate indifference to medical needs claims against Hickman County, Bates, Craft, Cox, Batts, Bragg, Sunder, Jenkins, Southern Health Partners, Robin, Hill, and Mitzia; and medical malpractice claims against Natchez Trace ER and Natchez Trace medical staff. Craft, Cox, Batts, Bragg, Jenkins, Sunder, Hill, Robin, and Mitzia are sued in their individual and official capacities. (*Id*. at 2-4). Bates, Hickman County, Southern Health Partners, the Natchez

Trace ER, and "the Natchez Trace medical staff" are sued in their official capacities only. (*Id*. at 2, 5-6).

Complaint 3: Alleges retaliation claims against Craft, Cox, and Batts; conditions of confinement claims against Batts, Craft, Bates, Cox, and Hickman County; access to courts claims against Craft, Bates, Cox, Batts, Walker, Bragg, and Jenkins; due process claims against Batts and Jenkins; civil conspiracy claims against Craft, Cox, and Batts; "class-of-one" claims against Craft, Cox, and Batts; and outrageous conduct claims against Craft, Cox, and Batts. Craft, Cox, Batts, Bragg, and Jenkins are sued in their individual and official capacities. (*Id*. at 2-4). Bates, Walker, and Hickman County are sued in their official capacities only. (*Id*. at 2, 3, 6).

Complaint 4: Alleges excessive force claims against Batts for April 11, 2024, and December 6, 2025 incidents and against Bragg for June 11, 2024 incident. Batts and Bragg are sued in their individual and official capacities. (*Id*. at 2-3).

If Plaintiff does not wish to pursue any of the above complaints, he may choose to file a notice of voluntary dismissal in any or all of the cases. Plaintiff will not be responsible for the filing fees for any voluntarily dismissed cases, and any voluntary dismissal will not count as a strike under the Prison Litigation Reform Act. Plaintiff, however, remains responsible for the filing fee in the instant case regardless of whether he elects to pursue the other cases.

The Court has conducted the required PLRA screening of the properly joined claims and Defendants in the Second Amended Complaint and finds that Plaintiff states Fourteenth Amendment excessive force claims under Section 1983 against Hickman County deputies Martinez and Nordon in their individual capacities. Likewise, Plaintiff's failure to intervene claim against Hickman County deputy McClanahan in his individual capacity states a colorable claim.

22

Plaintiff's municipal liability claims against Hickman County also will proceed for further development.

However, Plaintiff's supervisory liability claims against Craft, Doddo, and Cox in their individual capacities fail to state claims upon which relief may be granted. Those claims and Defendants are **DISMISSED**.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each remaining Defendant: Hickman County, Martinez, Nordon, and McClanahan. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons(es) to the U.S. Marshals Service for service on Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

Plaintiff is advised that he may request written resources for pro se litigants from the Clerk's Office and receive those resources free of charge if he does not abuse the privilege. The Clerk's Office does not, however, provide legal advice.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE