IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **JEFFERY R. WATTS # 40956-509,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HICKMAN COUNTY, TENNESSEE, *et al*.,**<br><br>**Defendants.** | **NO. 1:26-CV-00025**<br><br>**JUDGE CAMPBELL**<br>**MAGISTRATE JUDGE HILL** |

**MEMORANDUM OPINION AND ORDER**

This is a pro se prisoner civil rights case filed by Plaintiff Jeffery R. Watts, an inmate of the FCI-Atlanta.

By Memorandum Opinion and Order entered on March 23, 2026 in *Jeffery R. Watts v. Gary Jacobs*, Case No. 1:24-cv-00084 (M.D. Tenn.),[1] the Court severed the misjoined claims and Defendants in the Second Amended Complaint and directed the Clerk to open three new cases. The instant case is the first of the three severed cases (referred to by the Court in the March 23, 2026 Memorandum Opinion and Order as "Complaint 2"). (*Id.*, Doc. No. 43 at 12-13). In this case, Plaintiff alleges deliberate indifference to medical needs claims against Hickman County; Hickman County Mayor and ex officio inspector of the county jail Jim Bates; Hickman County Sheriff and Commissioner of Adult Services for the City of Centerville Jason Craft; Hickman County Sheriff's Department Deputy Joseph Cox; Superintendent of the municipal jail for the City of Centerville, Tennessee Nick Batts; Hickman County Jail Shift Sergeant Jamie Bragg; Hickman County Jail Shift Sergeant f/n/u Sunder; Hickman County Jail Shift Sergeant and Disciplinary

[1] That case remains pending before the undersigned.

Hearing Officer David Jenkins; Southern Health Partners; Nurse Practitioner Robin l/n/u; Nurse Kelly Hill; and Traveling Nurse f/n/u Mitzia; and medical malpractice claims against "Natchez Trace ER" and "Natchez Trace medical staff." Craft, Cox, Batts, Bragg, Jenkins, Hill, Robin, and Mitzia are sued in their individual and official capacities. Bates, Hickman County, Southern Health Partners, the Natchez Trace ER, and the Natchez Trace medical staff are sued in their official capacities only. The Court found these claims to be transactionally related because they concern the medical treatment Plaintiff did or did not receive while in the custody of the Hickman County Jail. (*See* Doc. No. 43, Case No. 1:24-cv-84).

Plaintiff has submitted an Application for Leave for Proceed In Forma Pauperis ("IFP Application") (Doc. No. 7) and a "Motion for Documents" (Doc. No. 6). The Court must resolve the filing fee first.

## I. FILING FEE

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application (Doc. No. 7), it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 7) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the FCI-Atlanta to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. PLRA SCREENING OF THE COMPLAINT

The Second Amended Complaint, as severed, is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### A. Facts Alleged in the Second Amended Complaint

The allegations of the Second Amended Complaint[2] are assumed true for purposes of the required PLRA screening.

While in the custody of the Hickman County Jail on November 30, 2024,[3] Plaintiff was the victim of excessive force used by two jail deputies, David Martinez and Dave Nordan.[4] Plaintiff sustained multiple injuries during the attack, including four broken teeth, a black eye, a broken left wrist/hand, bruises, burn marks, pain, and the onset of Post Traumatic Stress Disorder ("PTSD"). Defendants Hickman County, Craft, Cox, Batts, Bragg, f/n/u Sunder, Jenkins, Southern Health Partners, Robin l/n/u, Hill, and f/n/u Mitzia did not provide Plaintiff with proper medical and dental care for his injuries "[f]rom Nov. 30, 2023, till March 5, 2024 – April 10, 2024 till Jan. 16, 2025." (Doc. No. 1 at 12).[5] Plaintiff showed "every guard who worked in his unit" the injuries to his left hand ("because his hand would swell up, discolor (turn bluish)" and described "the extreme pain he was in . . . for months." (*Id.*) Plaintiff lost his four front teeth because he was never permitted to see a dentist.

Defendant Southern Health Partners is the entity responsible for providing medical care to Hickman County Jail inmates. It maintains a policy regarding over-the-counter pain medications such as Tylenol and Ibuprofen. Pursuant to this policy, Plaintiff would be given these "pain meds"

---

[2] Herein, the Court includes only the allegations of the Second Amended Complaint relevant to the severed claims of "Complaint 2." *See* Doc. No. 43, Case No. 1:24-cv-84.

[3] Plaintiff's dates (particularly the year) are inconsistent throughout the fifty-page pleading. It is unclear at times whether Plaintiff intended to type 2023 but inadvertently typed 2024. The Court surmises from context that Plaintiff's initial arrest occurred in 2023 although he typed 2024. Going forward, all applicable dates will need to be clarified.

[4] Plaintiff is pursuing Section 1983 claims regarding the alleged use of excessive force in Case No. 1:24-cv-84. Those claims are not part of the instant case.

[5] *See supra* n.3.

for a few days then would be required to wait a week or longer for Nurse Kelly to renew the "pain meds." (*Id.*) Despite Plaintiff telling Defendants Kelly, Batts, Cox, Bragg, Jenkins, and Sunder "of the extreme pain he was in . . . for months and months," Defendants would not secure additional pain medication for Plaintiff and told him that he could order Tylenol and Ibuprofen from the commissary; Plaintiff, however, could not afford to purchase those items. (*Id.*)

By December 30, 2023,[6] Plaintiff had filed several grievances regarding his medical treatment or lack thereof. On that date, Plaintiff threatened to sue the medical staff and to contact "the Board of Professional Responsibility." (*Id.*) Four hours later, "the jail officials" brought Plaintiff a wrist/hand brace. (*Id.* at 13). Bragg told Plaintiff that he had to be placed on "23 hrs lockdown" because of the brace. (*Id.*) Plaintiff accepted the brace and was placed on Administrative Segregation from the end of December 2023 until February 21, 2024.

Plaintiff asked "repeatedly" to see a "psych doc" due to his PTSD from "the beating and electrocuting he endured as well as other mental health problems", but he was never permitted to see one. (*Id.* at 13-14). Plaintiff experienced daily nightmares and PTSD flashbacks.

On March 5, 2024, Plaintiff was transferred to the Williamson County Jail. There, Plaintiff received a referral to see an orthopedic specialist, but Plaintiff was returned to the Hickman County Jail before that visit occurred. Plaintiff was not taken to the specialist until June 12, 2024, where he was told that his wrist would have to be rebroken and a piece of his left hip would need to be removed and placed in his hand with a permanent headless screw. Plaintiff's surgery occurred on September 13, 2024.

Upon returning to the jail after surgery, Plaintiff was in extreme pain. "The doctor who performed the surgery pr[e]scribed meds but the jail administration and medical personnel refused

---

[6] See *supra* n.3.

to give meds." (*Id*. at 15). Batts cancelled Plaintiff's follow-up visit after his surgery, interfering with Plaintiff's medical care.

As relief, the Second Amended Complaint seeks a declaratory judgment, compensatory and punitive damages, a jury trial, costs, and any other relief the Court deems just, proper, and equitable.

**B. Analysis**

The Second Amended Complaint alleges civil rights claims under 42 U.S.C. § 1983 and medical malpractice claims. The Court will begin with the federal claims.

1. Section 1983 Claims

Plaintiff alleges deliberate indifference to medical needs claims under Section 1983 against Defendants Hickman County, Jim Bates, Jason Craft, Joseph Cox, Nick Batts, Jamie Bragg, Sergeant f/n/u Sunder, David Jenkins, Southern Health Partners, Robin l/n/u, Kelly Hill, and f/n/u Mitzia. Craft, Cox, Batts, Bragg, Jenkins, Hill, Robin, and Mitzia are sued in their individual and official capacities. Bates, Hickman County, and Southern Health Partners are sued in their official capacities only.

Plaintiff brings his claims under 42 U.S.C. § 1983 which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

a. *Individual Capacity Claims*

Defendants Craft, Cox, Batts, Bragg, Robin l/n/u, Hill, and f/n/u Mitzia are sued in their individual capacities for their actions or inactions with respect to Plaintiff's medical care while in the custody of the Hickman County Jail.

The Eighth Amendment[7] "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' towards the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 895 (6th Cir. 2004)). An Eighth Amendment deliberate indifference claim against an individual actor has objective and subjective components. *Farmer*, 511 U.S. 825, 834; *Blackmore,* 390 F.3d 890, 895. The objective component requires showing "the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. Liberally construing the pro se complaint, Plaintiff alleges that the injuries he received because of the officers' use of excessive

[7] The Second Amended Complaint alleges that, from November 30, 2023 to March 18, 2024, Plaintiff was a pretrial detainee. (Doc. No. 1 at 12). However, as the Court has noted previously, in the Second Amended Complaint Plaintiff appears to confuse the years in which events allegedly occurred. Thus, the Court cannot confidently analyze Plaintiff's Section 1983 claims as though he was a pretrial detainee at the time of the alleged events. Thus, the Court analyzes Plaintiff's Section 1983 claims as though Plaintiff was a convicted inmate because, if the Second Amended Complaint states Section 1983 claims upon which relief can be granted under the Eighth Amendment (which is applicable to convicted prisoners), it will necessarily state claims upon which relief can be granted under the Fourteenth Amendment (which is applicable to pretrial inmates). *See Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585 (6th Cir. 2021), *abrogated on other grounds by Poynter by and through Fernandez v. Shirley,* 191 F.4th 745 (6th Cir. 2026) (to prove a deliberate indifference to serious medical needs claim under the Fourteenth Amendment, a pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard—which is a lower standard than convicted inmates must meet).

force and the pain resulting from those injuries and his subsequent surgery constitute sufficiently serious medical needs.

"The subjective component requires a plaintiff to show that 'each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it.'" *Greene v. Crawford Cnty, Mich.*, 22 F.4th 593, 605-06 (6th Cir. Jan. 4, 2022) (quoting *Griffith v. Franklin Cnty, Ky.*, 975 F.3d 554, 568 (6th Cir. Sept. 21, 2020)). This showing "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, and is instead "equivalent to criminal recklessness[,]" *Greene*, 22 F.4th at 606 (quoting *Griffith*, 975 F.3d at 568).

The Court finds that Plaintiff's pain and wrist/hand injury (the latter of which necessitated re-breaking Plaintiff's wrist/hand followed by a significant surgery, according to Plaintiff) constitute sufficiently serious medical needs. *See Norris v. Leveck,* No. 3:20-cv-00182, 2022 WL 16541188, at *2 (M.D. Tenn. Oct. 28, 2022) (finding that inmate's broken hand constituted a sufficiently serious medical need); *Scott v. Antonini*, No. 07-10459, 2011 WL 533869, at *2 (E.D. Mich. Feb. 15, 2011) ("It is well established that pain can be a sufficiently serious medical need for purposes of an indifference claim.").

As to the state of mind of Defendants, the complaint alleges that Plaintiff showed "every guard who worked in his unit" his swollen, discolored hand and described the "extreme pain" he was experiencing (Doc. No. 1 at 12), but Defendants Craft, Cox, Batts, and Bragg refused to obtain medical care for Plaintiff's left wrist injury for approximately a one year period. This delay, according to Plaintiff, made repair of the injury more difficult. Further, the complaint alleges that Hill and Mitzia refused to provide Plaintiff with pain medications ordered by his surgeon after Plaintiff's surgery while knowing Plaintiff was in severe pain. The Court finds that these

allegations, "if true," could show that "the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." *Greene*, 22 F.4th 593, 605-06.

Consequently, the Court finds that the Plaintiff's Section 1983 claims against Defendants Craft, Cox, Batts, Bragg, Robin l/n/u, Hill, and f/n/u Mitzia in their individual capacities state Eighth Amendment claims upon which relief can be granted. These claims shall proceed.

b. *Official Capacity Claims*

Defendants Craft, Cox, Batts, Bragg, Jenkins, Hill, Robin, Mitzia, Bates, Hickman County, Southern Health Partners, the Natchez Trace ER, and "the Natchez Trace medical staff" are sued in their official capacities.

i. Craft, Cox, Batts, Bragg, Jenkins, Bates, and Hickman County

When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, the Second Amended Complaint alleges that Defendants Craft, Cox, Batts, Bragg, Jenkins, and Bates are employed by Hickman County. By suing these individuals in their official capacities, Plaintiff seeks to hold Hickman County liable for Defendants' actions. It would be redundant, however, to maintain official-capacity claims against multiple Defendants representing the same entity. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims). Accordingly, the Court will maintain Plaintiff's Section 1983 claim against Hickman County, and the remaining official-capacity claims will be dismissed. *See J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 723 n.4 (6th Cir. 2020) (citing *Foster v. Michigan*, 573 F.

App'x 377, 390 (6th Cir. 2014)) ("The district court correctly dismissed these official capacity claims as superfluous of the claim against the county.").

A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Hickman County or its agent. *Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short, for Hickman County to be liable Plaintiff under Section 1983, there must be a direct causal link between an official county policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. 658, 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 393 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). Plaintiff alleges an unofficial policy or practice of understaffing at the jail led to his inadequate medical treatment "for several months." (Doc. No. 1 at 16).

Among other requirements, to state an unofficial-policy claim, Plaintiff must demonstrate "the existence of a clear and persistent pattern of illegal activity." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Doe v. Cnty. of Claiborne*, 103 F.3d 495, 508 (6th Cir. 1996)). To show a clear pattern, Plaintiff must establish that others were subject to similar deprivations or injuries. *See id.* at 434 (rejecting "persistent pattern" argument because plaintiff "did not reach beyond the facts of [plaintiff's] case to show any possibility of a pattern"); *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018) (same). Plaintiff, however, has not alleged that the delays in his medical care, or denial of medical care altogether, were part of a "widespread, ongoing issue affecting other prisoners." *See Savoie v. Oliver*, 731 F. Supp.3d 862, 870 (E.D. Mich. 2024) (dismissing prisoner's "unofficial policy of understaffing" claim where plaintiff failed

to allege "the delays in his medical care were part of a widespread, ongoing issue affecting other prisoners."). Accordingly, Plaintiff's claims against Hickman County will be dismissed.

ii. Southern Health Partners, Hill, Robin, and Mitzia

Because Southern Health Partners performs a traditional state function in providing medical care to state inmates, it acts under the color of state law for Section 1983 purposes. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The Second Amended Complaint alleges that Defendants Hill, Robin, and Mitzia are employees of Southern Health Partners. Any official capacity claims against Hill, Robin, and Mitzia are claims against their employer, Southern Health Partners. *See Glover v. Rivas*, 536 F. Supp. 3d 161, 170 (E.D. Mich. 2021) ("Because Wright [an employee of Corizon] is being sued in her official capacity, this claim against Wright is instead a claim against her employer, Corizon Health."). Because it would be redundant to maintain official-capacity claims against multiple Defendants representing the same entity, *see Jackson*, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008), the Court will maintain the Section 1983 against Southern Health Partners, and the remaining official-capacity claims will be dismissed. See *Williamson Cnty.*, 951 F.3d 709, 723 n.4.

The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). Thus, for Southern Health Partners to be liable under Section 1983, Plaintiff must allege that there is a direct causal link between a policy or custom of Southern Health and the alleged constitutional violation. *See Monell*, 436 U.S. 658, 691. In other words, Southern Health Partners may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.,* 592 F. App'x 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013)

(collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right"). Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818. Liability attaches only if Southern Health Partner's policies are shown to be the "moving force" behind Plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, Plaintiff alleges that Southern Health Partners has a policy whereby inmates who are given pain medication must wait a week or longer for additional pain medication, regardless of their pain level and their ability to purchase pain medication from the commissary, and Defendants' execution of this policy caused Plaintiff to suffer pain unnecessarily after his surgery, particularly considering that the surgeon prescribed pain medication for Plaintiff. The Court finds that Plaintiff's official capacity claim against Southern Health Partners may proceed for further development.

2. Medical Malpractice Claims

The Second Amended Complaint also asserts state-law medical malpractice claims against the Natchez Trace ER and "Natchez Trace medical staff."

In 2011, the Tennessee legislature passed the Tennessee Civil Justice Act of 2011, "amend[ing] the existing Tennessee Medical Malpractice Act by removing all references to 'medical malpractice' from the Tennessee Code and replacing them with 'health care liability' or 'health care liability action' as applicable." *See Elliothorpe v. Weismark*, 479 S.W.3d 818, 826 (Tenn. 2015) (citing Tennessee Civil Justice Act of 2011, ch. 510, 2011 Tenn. Pub Acts 1505, codified at Tenn. Code Ann. §§ 29-26-101 et seq. (Supp. 2011)). The amendment also added a

provision defining "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1) (Supp. 2011). The term "health care provider" is broadly defined under the THCLA to include individuals "involved in the provision of health care services," as well as "any legal entity . . . which employs one or more health care practitioners," Tenn. Code Ann. § 29- 26-101(a)(2)(D) & (E).

Under the THCLA, any party initiating a "health care liability action" "shall give" sixty days' written, pre-suit notice to "each health care provider that will be a named defendant." Tenn. Code Ann. § 29-26-121(a)(1). This requirement is mandatory, absent a showing of "extraordinary cause," *id*. § 29-26-121(b), and the ordinary remedy for failure to comply with it is dismissal of the suit without prejudice, *Elliothorpe*, 479 S.W.3d at 829.

In addition, in any "health care liability action in which expert testimony is required by § 29-26-115," the plaintiff "shall file," with the complaint, a "certificate of good faith," confirming that one or more experts had been consulted and had provided a signed written statement of their belief that there was a good faith basis for filing the complaint. Tenn. Code Ann. § 29-26-122(a). Compliance with this provision, too, is mandatory, and the statute itself provides that the failure of a plaintiff to comply with it makes the action "subject to dismissal with prejudice," "absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause." *Id*. § 29-26-122(c), (a).

The record at this time is not sufficiently developed as to whether Plaintiff provided pre-suit notice of his lawsuit. Because there are federal claims proceeding against multiple Defendants, the Court will permit Plaintiff's state law medical malpractice claims to proceed for further development of the record. The malpractice claims, however, are subject to dismissal without prejudice if Plaintiff did not follow the appropriate rules before filing his claims. Further, Plaintiff will be required to amend his complaint to name the proper defendants for such medical malpractice claims, if Plaintiff complied with the pre-suit rules for such claims.

## III. MOTION FOR DOCUMENTS

Plaintiff filed a "Motion for Documents" in which he seeks a variety of items from the Court. (Doc. No. 6).

First, he states that the "Institution F.C.I. Atlanta has already lost most of my legal material" and therefore he asks the Court to mail him "all of the documents" filed in Cases No. 1:24-cv-84, 1:26-cv-25, 1:26-cv-26, and 1:26-cv-27. (*Id*. at 1). He further asks the Court to mail these documents "clearly marked 'OPEN INSIDE OF INMATE'S PRESEN[C]E' so that I know I'm getting all the documents and things the Court and the Clerk's Office is [sic] sending me." (*Id*.)

The Clerk will be directed to mail Plaintiff a copy of the docket sheet in this case as well as a copy of the Second Amended Complaint. Upon reviewing those documents, if Plaintiff needs a copy of additional filings, he may request them in writing to the Clerk's Office. Plaintiff may incur a fee for voluminous copy requests. The Court cannot dictate how mailroom staff at FCI-Atlanta opens inmate mail.

Next, Plaintiff requests a copy of "the T.C.A. code book and the Tenn. Rules and Regulations code book for research and litigations as I have no way to look up Tenn. state law or

Tenn. Rules and Regulations codes to help me defend the cases I have filed with this Court." (Doc. No. 6 at 2). Plaintiff also requests a copy of the Local Rules of Court. (*Id.*) The Court does not provide copies of code books or rule books to pro se litigants. However, the Court has prepared a Pro Se Handbook for Prisoner Civil Rights Actions that will be helpful to Plaintiff. The Clerk will be directed to send Plaintiff a copy of the handbook.

## IV. CONCLUSION AND REFERRAL

The Court has conducted the required PLRA screening of the Second Amended Complaint (as severed) and finds that Plaintiff states deliberate indifference to medical needs claims under Section 1983 against Defendants Craft, Cox, Batts, Bragg, Robin l/n/u, Hill, and f/n/u Mitzia in their individual capacities.

However, Plaintiff's deliberate indifference to medical needs claims under Section 1983 against Defendants Craft, Cox, Batts, Bragg, Jenkins, and Bates in their official capacities are **DISMISSED** as superfluous of Plaintiff's Section 1983 claim against Hickman County.

Likewise, Plaintiff's deliberate indifference to medical needs claims under Section 1983 against Hill, Robin l/n/u, and f/n/u Mitzia in their official capacities are **DISMISSED** as superfluous of Plaintiff's Section 1983 claim against Southern Health Partners.

Plaintiff's Section 1983 claim against Hickman County is **DISMISSED** for failure to state a claim upon which relief can be granted.

Conversely, Plaintiff's Section 1983 claim against Southern Health Partners shall proceed for further development of the record, as will Plaintiff's state law medical malpractice claims against the Natchez Trace ER and Natchez Trace medical staff.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each remaining Defendant: Craft, Cox, Batts, Bragg, Robin l/n/u, Hill, f/n/u Mitzia, Southern Health Partners, Natchez Trace ER, and Natchez Trace medical staff.

Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons(es) to the U.S. Marshals Service for service on Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

Plaintiff's Motion for Documents (Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is **GRANTED** insofar as the Clerk is **DIRECTED** to mail Plaintiff a copy of the docket sheet and Second Amended Complaint in this case. In addition, the Clerk is **DIRECTED** to mail Plaintiff a black-and-white, unbound copy of the Court's Pro Se Handbook for Prisoner Civil Rights Actions. The motion is **DENIED** insofar as the Court does not provide code books or evidentiary books to litigants.

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (7B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he fails to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

William L. Campbell Jr.
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE